UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Elvira Fernandez, individually and as Co-Personal Representative of the Estate of Daniel Frank Rodriguez; Frank Rodriquez, individually and as Co-Personal Representative of the Estate of Daniel Frank Rodriguez,<br><br>Plaintiffs,<br><br>vs.<br><br>Sergio Virgillo and Maria Virgillo husband and wife,<br><br>Defendants. | 2:12-cv-02475 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 3] |

## I. MOTION PRESENTED

Defendant Sergio Virgillo ("defendant" or "Virgillo")[1] moves to dismiss the complaint filed by Elvira Fernandez and Frank Rodriquez ("plaintiffs") with prejudice on the following grounds: (1) it is barred by the doctrine of abatement due to the pending

---

[1] Plaintiffs note that defendant's wife, Maria Virgillo, is a named defendant only because any judgment obtained will be against the community estate. Thus, for sake of continuity, references to the defendant will be singular.

-1-

action in *Fernandez, et al. v. Chrisman, et al.*, NO. 2:11-CV-02001-FJM (*Fernandez I*); (2) laches and/or unclean hands require dismissal of the complaint; (3) federal abstention or principles of equity warrant dismissal; and (4) the plaintiffs' complaint fails to allege specific facts demonstrating an actionable constitutional violation.  Defendant attached documents to support his procedural arguments related to abatement, laches, and abstention.  He asserts that these materials are not submitted in support of his argument to dismiss the complaint for failure to state a claim, as that request is brought under Rule 12(b)(6) and must be limited to the face of the complaint.[2]  Plaintiffs' opposition is at docket 7, and defendant's reply is at docket 8.  Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

On October 5, 2010, Elvira Fernandez called 911 concerning a dispute she was having with her son, Daniel Frank Rodriguez ("Daniel").  Virgillo, a Phoenix Police Officer, and Richard Chrisman, who was also a Phoenix Police Officer at the time, arrived at the trailer Daniel shared with Ms. Fernandez.  Ms. Fernandez was outside the trailer at her neighbor's home.  She told the officers that she had gotten into an argument with Daniel and that Daniel had thrown something at the wall of the trailer.  She wanted the officers to help resolve the dispute by asking Daniel to leave.  She told the officers that Daniel had not hurt her and that there were no weapons in the trailer.

The officers knocked on the door, but Daniel did not respond.  The officers returned to the neighbor's home to speak to Ms. Fernandez.  She told the officers that the door to the trailer was unlocked.  The two officers returned to the trailer and knocked again.  When no one responded, Officer Chrisman opened the door and entered with Virgillo following behind.

Daniel told the officers that he owned the trailer and demanded that the officers leave.  In response, Chrisman pulled a gun out and placed the muzzle against Daniel's

---

[2]Doc. 8 at n. 1.

temple and refused to leave.  Chrisman then re-holstered his gun and engaged in a physical struggle with Daniel, which led to Chrisman spraying pepper spray into Daniel's eyes.  Chrisman used his Taser on Daniel's chest.  Daniel fell down but stood back up.  Defendant then tased Daniel in the chest again.  The complaint alleges that Virgillo tased Daniel in order to calm Chrisman down.

Defendant talked to Daniel to try and calm the situation, suggesting they step outside or that he give him a ride somewhere.  Daniel said no and walked towards his bicycle, which was in the living room of the trailer, and told the officers he was going to ride it over to his father's house.  As Daniel started to wheel the bicycle towards the front door, Chrisman grabbed Daniel.  At this point, Daniel's dog began barking.  Chrisman shot the dog twice, killing him instantly.  Daniel repeatedly asked Chrisman why had he killed the dog.  Daniel tried to leave the trailer with his bike.  Chrisman aimed his gun at Daniel, who then stepped back with his hands up.  According to the complaint, defendant felt that Chrisman was going to shoot Daniel and turned to get out of the danger zone.  Chrisman shot Daniel twice in the chest, killing him.[3]

Plaintiffs filed a lawsuit against Chrisman and the City of Phoenix (the "city") in *Fernandez I*.  The plaintiffs' amended complaint in *Fernandez I* asserts five claims against Chrisman: a §1983 claim for unlawful entry; a §1983 claim for use of unreasonable force; a §1983 claim for interference with their right to family society and companionship; a negligence claim; and a gross negligence claim.  The amended complaint in *Fernandez I* asserts three claims against the city: a §1983 claim for unconstitutional policies, customs and failure to screen, hire, train and supervise officers; a negligence claim; and a gross negligence claim.  The city and Chrisman were represented by separate counsel, and the city denied any legal responsibility for the actions of Chrisman in shooting the unarmed suspect.  The court dismissed the claims

---

[3]According to the parties' briefing, Chrisman is no longer a Phoenix police officer and is awaiting trial on criminal charges linked to the events described above.

against the city. The plaintiffs' claims against Chrisman in *Fernandez I* remain pending, and plaintiffs are currently seeking summary judgment against Chrisman.

On July 26, 2012, after the city's dismissal from *Fernandez I*, plaintiffs took a deposition of Virgillo. Plaintiffs indicated at the end of the deposition that they might bring suit against him.[4] Plaintiffs did not seek leave from the court in *Fernandez I* to modify the scheduling order in that case and allow them to amend the complaint and join Virgillo as a defendant. Rather, plaintiffs filed this separate lawsuit against Virgillo in state court, which defendant removed to federal court on November 16, 2012. The complaint in this case alleges four claims against Virgillo: (1) a §1983 claim for unlawful entry; (2) a §1983 claim for unreasonable use of force; (3) a §1983 claim for unreasonable use of force for failure to intervene; and (4) a §1983 claim for interference with the right to family society and companionship. The complaint in this case does not allege a state law negligence or gross negligence claim against Virgillo. The city is not a named party in this case. However, the same attorneys who represented the city in *Frenandez I* represent Virgillo and his wife in this case.

### III.  STANDARD OF REVIEW

The court generally has the discretion after weighing the equities of the case "to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions."[5] The court looks at whether the second action involves the same subject matter at the same time in the same court and against the same defendant.[6]

---

[4] Doc. 3-1 at pp. 69-71.

[5] *Adams v. Cal. Dep't of Health Services*, 487 F.3d 684, 688 (2007); *see also Weiner v. Shearson, Hammill & Co., Inc.*, 521 F.2d 817, 820 (9th Cir. 1975) ("Where two federal district courts are involved, there has been little trouble in finding a discretionary power to abate the second action.").

[6] *Adams,* 487 F.3d at 688-89.

Similarly, the equitable defense of laches is also a matter that is committed to the sound discretion of the trial court. Laches is not determined by a strict set of rules, but rather by looking at all the circumstances and weighing the equities.[7]

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims. In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[8] Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[9] "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[10]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[11] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[13] "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of

---

[7]*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028, 1032 (9th Cir. 1992); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 834 (9th Cir. 2002) ("[T]he district court's application of the laches factors is entitled to deference, not to be reviewed de novo.").

[8]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[9]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[10]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]*Id.*

[13]*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

entitlement to relief.'"[14]  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."[15]

In deciding whether to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to reviewing only the complaint, but may review materials which are properly submitted as part of the complaint and may take judicial notice of undisputed matters of public record that are outside the pleadings.[16]

## IV.  DISCUSSION

### A. Abatement/Abstention/Laches

Defendant argues that the case should be abated given the pendency of the prior lawsuit against Chrisman and the city.  Indeed, a plaintiff does not have the right to maintain two separate actions involving the same subject matter at the same time in the same court against the same defendant or someone in privity with that defendant.[17] Grounds for abatement of the later-filed suit exist when there is a pending prior action "between the same parties, predicated upon the same cause of action and growing out of the same transaction, and in which identical relief is sought."[18]  Thus, abatement is similar to the issue of claim preclusion.[19]  In other words, abatement can be considered

---

[14] *Id.* (quoting *Twombly*, 550 U.S. at 557).

[15] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

[16] *See Gonzalez v. First Franklin Loan Services*, 2010 WL 144862, at *3 (E.D. Cal. Jan. 11, 2010) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001)); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

[17] *Adams*, 487 F.3d at 688-89.

[18] *Stone v. Baum*, 409 F. Supp. 2d 1164, 1177 (D. Ariz. 2005) (quoting *O'Reilly v. Curtis Pub. Co.*, 31 F.Supp. 364, 364-65 (1940)) (internal quotations omitted).

[19] *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (noting that the doctrine of claim preclusion applies when there is a final judgment on the merits in a

if the claims are duplicative, and the test for whether a suit is duplicative is the same test used to see whether claim preclusion applies. Therefore, when considering whether the later-filed suit is duplicative of the first, the court considers whether the second suit would be precluded pursuant to claim preclusion if we assume that the first suit were already final.[20]

While it is clear that this case and *Fernandez I* stem from the same transaction and involve the same subject matter, the parties dispute whether the two cases involve the same defendants or defendants who are in privity with each other. Privity exists between a nonparty to a prior action and a party to that prior action if: (1) the parties agreed to be bound by the determination of issues; (2) there is a preexisting substantive legal relationship between the nonparty and a party to the judgment, such as succeeding owners of property or assignees and their assignors; (3) the nonparty in the first action was adequately represented by someone with the same interests who was a party to the prior suit; (4) the nonparty assumed control over the prior litigation; (5) the nonparty later brings a lawsuit as the designated representative of a person who was a party to the prior adjudication; or (6) there is a special statutory scheme that expressly forecloses successive litigation by a nonparty, which effectively creates privity.[21]

All of the above situations, except for the third one, are obviously inapplicable here. As for the third situation, whether the nonparty in the first action was adequately represented by someone with the same interest who was a party to the prior suit, this

---

case where the same cause of action is involved in both suits and when the parties are identical or in privity with each other).

[20] *Adams*, 487 F.3d at 689 (applying the claim preclusion test to the issue of duplicative lawsuits and examining whether the causes of action and relief sought, as well as the parties or privies to the action, are the same).

[21] *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (rejecting virtual representation as the test for finding privity in the preclusion context and setting forth six exceptions to the general rule forbidding nonparty preclusion); *In re Consolidated Salmon Cases*, 688 F. Supp. 2d 1001, 1007-08 (E.D. Cal. 2010) (applying the privity test set forth in Taylor to determine whether a case should be dismissed as duplicative).

court concludes that Virgillo is not in privity with either Chrisman or the city. Chrisman and Virgillo do not share a common interest because, except for the unlawful entry claims, the claims in this case are based on the separate conduct of Virgillo the day Chrisman shot Daniel. Their interests are not aligned. As for defendant's assertion that he is in privity with the city, the pending action in *Fernandez I* is only against Chrisman now that the claims against the city have been dismissed. Furthermore, the claims that plaintiffs brought against the city in *Fernandez I* were separate and distinct from the claims now raised against Virgillo: the claims against the city in *Fernandez I* challenged the conduct of the city itself. The court cannot find that the city and Virgillo had interests that aligned and that city understood that it was acting in a representative capacity for Virgillo or his actions.

Defendant asserts that this lawsuit abuses the judicial process and that this lawsuit was only filed because it would be too late to amend the complaint in *Fernandez I* to add Virgillo based on the scheduling order. However, even assuming that it would be too late for plaintiffs to amend their complaint in *Fernandez I*, the court cannot dismiss this case as a sanction for avoiding the scheduling order in the prior case, as the Ninth Circuit allows subsequent complaints against defendants after a motion to amend to add those defendants was denied as untimely under a scheduling order.[22]

Defendant argues that if not dismissed as duplicative, the complaint should be dismissed on the basis of laches. Laches is an equitable defense that limits the time in which a party may bring suit. To establish laches defendant must show plaintiffs' lack of diligence in pursing their claim and that he suffered prejudice as a result.[23] Assuming

---

[22] *See Atchison, Topeka and Santa Fe Railway Co. v. Hercules Inc.*, 146 F.3d 1071 (9th Cir. 1998).

[23] *Save the Peaks Coalition v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012).

that laches is even available in this § 1983 case,[24] the court concludes that there has not been an unreasonable delay or lack of diligence on plaintiffs' part because the parties do not dispute that plaintiffs filed this § 1983 action for damages within the statute of limitations. "While laches and the statute of limitations are distinct defenses, a laches determination is made with reference to the limitations period for the analogous action at law. If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable."[25] Defendant has not overcome that strong presumption and demonstrated that this case is one of those rare circumstances where laches should be applied to dismiss a suit even though it was filed within the applicable statute of limitations.

**B. Rule 12(b) Motion to Dismiss**

Defendant argues that the four claims against him—unlawful entry, unreasonable force, failure to intervene, and interference with the right to companionship and society of a child—should be dismissed because he is entitled to qualified immunity in that a reasonable officer in his position could have believed his conduct was lawful based on clearly established federal law. However, the court is hard-pressed to dismiss a complaint on qualified immunity grounds at this early stage in the litigation. The purpose of a Rule 12(b)(6) is not to determine if a plaintiff will ultimately prevail, but whether he is entitled to offer evidence to prove the claims.[26] Without an evidentiary record in this case, the court cannot confidently rule as to whether Virgillo's conduct was

---

[24] *See Floyd v. Oliverson*, 389 Fed. Appx. 641 (9th Cir. 2010) (noting that laches does not apply to an action at law).

[25] *Jarrow*, 304 F.3d at 835.

[26] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

reasonable under clearly established federal law, and thus dismissal based on qualified immunity at this stage and in this case is not warranted.[27]

Defendant also argues that regardless of his qualified immunity defense, plaintiffs have failed to state a claim for which relief can be granted given the applicable law governing each of the claims against him. As to the claim for unlawful entry, defendant argues that Ms. Fernandez gave the officers consent to enter the unlocked trailer, and so his entry was in fact lawful based on the consent exception to the warrant requirement. Plaintiffs argue that Daniel revoked that consent, and thus Virgillo's presence in the home was thereafter unlawful. Indeed, the complaint alleges that when Chrisman and Virgillo entered the trailer, Daniel told them that he owned the trailer and that they could not be inside his trailer and demanded that they leave. Defendant argues that Daniel could not revoke consent at that point in the encounter, citing to *Georgia v. Randolph*.[28]

In *Randolph* the Supreme Court held that a warrantless search was unreasonable as to a defendant who was physically present at the time his wife gave police permission to search their home, but who unequivocally refused to give his own consent. The Court concluded that consent given by one occupant is not valid in the face of the refusal of another physically present occupant, distinguishing *United States v. Matlock*,[29] which recognized the permissibility of an entry made with the consent of one co-occupant in the other's absence. "[I]f a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice

---

[27] *See Anderson v. Solis*, No. C12-3855, 2013 WL 245232, at *4 (N.D. Cal. Jan. 22, 2013) ("A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6) because facts necessary to establish this affirmative defense generally must be shown by matters outside the complaint.").

[28] 547 U.S. 103 (2006).

[29] 415 U.S. 164 (1974).

-10-

for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy loses out [on the opportunity to deny consent]."[30]

Defendant argues that because Daniel was not present during the initial colloquy between the officers and Ms. Fernandez when she gave them consent to enter, it was too late for him to object to the officers' entry. Although Daniel was not present right when his mom told the officers that the door was unlocked, he did immediately object to their entry when they stepped inside and told him that he was the owner of the trailer. As the Court noted in *Randolph*, "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident."[31] The Sixth Circuit, in an unpublished opinion, found that a co-tenant who objected shortly after his fellow co-tenant consented, but right when a police officer entered his home, was not simply a nearby "potential objector" but was instead sufficiently present at the time of consent to effectively object to that consent, applying *Randolph's* rationale to the situation.[32] The court persuasively concluded that such an objection is sufficiently contemporaneous and effectively contradicts a co-tenant's consent; thus, it found that the officer's warantless entry and search in that case was unconstitutional. The court also noted that the co-tenant's objection at least operated as a withdrawal of the earlier consent and restricted the scope of the entry and search.[33] There is no Ninth Circuit precedent governing the precise situation at issue here, but the court concludes that plaintiffs' claim of unlawful entry is at least plausible given that the rationale in *Randolph* could apply to the situation at hand.

---

[30]*Id.* at 120-21.

[31]*Id.* at 120.

[32]*United States v. Tatman*, 397 Fed.Appx. 152, 160-62 (6th Cir. 2010).

[33]*Id.* at 162-63.

As to the claim for unreasonable force based on Virgillo's use of his Taser against Daniel, the defendant only asserts that qualified immunity prevents plaintiffs from recovering. As discussed above, the court concludes that dismissal based qualified immunity before the submission of evidence is not warranted in this case. Plaintiff states at least a plausible claim of relief.

Plaintiffs' claim for failure to intervene is also plausible given that the complaint alleges Virgillo knew Chrisman was going to kill Daniel and left the "danger zone," which plausibly suggests that Virgillo may have had a realistic opportunity to intervene.[34] Whether or not Virgillo had the realistic opportunity to intervene requires a review of the evidence and is not for the court to determine in this 12(b)(6) analysis.

Finally, plaintiffs' claim against Virgillo for depriving them of their right to the companionship and society of their child at least states a plausible claim for relief. "Official conduct that 'shocks the conscience' in depriving parents of that interest is cognizable as a violation of due process."[35] Whether excessive force is sufficiently shocking depends on whether the official realistically had time to deliberate his actions.[36] If an officer makes a snap judgment, his conduct is only sufficiently shocking if he acted "with a purpose to harm unrelated to legitimate law enforcement objectives."[37] Plaintiff has alleged that Virgillo's actions—tasing Daniel to de-escalate the situation and failing to intervene despite knowing that his partner was going to shoot Daniel—were intentional and deliberately injurious. Keeping the 12(b)(6) standards in mind, the court concludes that the complaint sets forth at least a plausible claim and dismissal is not warranted on this claim at this time.

---

[34]*Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (holding that the evidence in that case demonstrated that the non-shooting officers did not have a realistic opportunity to intercede and therefore could not be held liable for failing to stop the shooting).

[35]*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

[36]*Id.*

[37]*Id.*

## **V.  CONCLUSION**

Based on the foregoing analysis, defendant's motion to dismiss at docket 3 is **DENIED**.

DATED this 15th day of February 2013.

                                       /s/
                         JOHN W. SEDWICK
                UNITED STATES DISTRICT JUDGE