1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## DISTRICT OF ARIZONA

10
11
12
13
14
15
16
17
18
19
20

**Elvira Fernandez, individually and as**
**Co-Personal Representative of the**
**Estate of Daniel Frank Rodriguez;**
**Frank Rodriquez, individually and as**
**Co-Personal Representative of the**
**Estate of Daniel Frank Rodriguez,**

       **Plaintiffs,**

      **vs.**

**Sergio Virgillo and Maria Virgillo**
**husband and wife,**

       **Defendants.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**2:12-cv-02475 JWS**

**ORDER AND OPINION**

**[Re: Motion at Docket 3]**

21

## I.  MOTION PRESENTED

22
23
24
25

Defendant Sergio Virgillo ("defendant" or "Virgillo")[1] moves to dismiss the complaint filed by Elvira Fernandez and Frank Rodriquez ("plaintiffs") with prejudice on the following grounds: (1) it is barred by the doctrine of abatement due to the pending

26
27
28

      [1]Plaintiffs note that defendant's wife, Maria Virgillo, is a named defendant only because any judgment obtained will be against the community estate.  Thus, for sake of continuity, references to the defendant will be singular.

1   action in *Fernandez, et al. v. Chrisman, et al.*, NO. 2:11-CV-02001-FJM (*Fernandez I*);

2   (2) laches and/or unclean hands require dismissal of the complaint; (3) federal

3   abstention or principles of equity warrant dismissal; and (4) the plaintiffs' complaint fails

4   to allege specific facts demonstrating an actionable constitutional violation.  Defendant

5   attached documents to support his procedural arguments related to abatement, laches,

6   and abstention.  He asserts that these materials are not submitted in support of his

7   argument to dismiss the complaint for failure to state a claim, as that request is brought

8   under Rule 12(b)(6) and must be limited to the face of the complaint.[2]  Plaintiffs'

9   opposition is at docket 7, and defendant's reply is at docket 8.  Oral argument was not

10  requested and would not assist the court.

11  **II.  BACKGROUND**

12  On October 5, 2010, Elvira Fernandez called 911 concerning a dispute she was

13  having with her son, Daniel Frank Rodriguez ("Daniel").  Virgillo, a Phoenix Police

14  Officer, and Richard Chrisman, who was also a Phoenix Police Officer at the time,

15  arrived at the trailer Daniel shared with Ms. Fernandez.  Ms. Fernandez was outside the

16  trailer at her neighbor's home.  She told the officers that she had gotten into an

17  argument with Daniel and that Daniel had thrown something at the wall of the trailer.

18  She wanted the officers to help resolve the dispute by asking Daniel to leave.  She told

19  the officers that Daniel had not hurt her and that there were no weapons in the trailer.

20  The officers knocked on the door, but Daniel did not respond.  The officers

21  returned to the neighbor's home to speak to Ms. Fernandez.  She told the officers that

22  the door to the trailer was unlocked.  The two officers returned to the trailer and knocked

23  again.  When no one responded, Officer Chrisman opened the door and entered with

24  Virgillo following behind.

25  Daniel told the officers that he owned the trailer and demanded that the officers

26  leave.  In response, Chrisman pulled a gun out and placed the muzzle against Daniel's

27  _____

28  [2]Doc. 8 at n. 1.

1   temple and refused to leave.  Chrisman then re-holstered his gun and engaged in a

2   physical struggle with Daniel, which led to Chrisman spraying pepper spray into Daniel's

3   eyes.  Chrisman used his Taser on Daniel's chest.  Daniel fell down but stood back up.

4   Defendant then tased Daniel in the chest again.  The complaint alleges that Virgillo

5   tased Daniel in order to calm Chrisman down.

6           Defendant talked to Daniel to try and calm the situation, suggesting they step

7   outside or that he give him a ride somewhere.  Daniel said no and walked towards his

8   bicycle, which was in the living room of the trailer, and told the officers he was going to

9   ride it over to his father's house.  As Daniel started to wheel the bicycle towards the

10  front door, Chrisman grabbed Daniel.  At this point, Daniel's dog began barking.

11  Chrisman shot the dog twice, killing him instantly.  Daniel repeatedly asked Chrisman

12  why had he killed the dog.  Daniel tried to leave the trailer with his bike.  Chrisman

13  aimed his gun at Daniel, who then stepped back with his hands up.  According to the

14  complaint, defendant felt that Chrisman was going to shoot Daniel and turned to get out

15  of the danger zone.  Chrisman shot Daniel twice in the chest, killing him.[3]

16          Plaintiffs filed a lawsuit against Chrisman and the City of Phoenix (the "city") in

17  *Fernandez I*.  The plaintiffs' amended complaint in *Fernandez I* asserts five claims

18  against Chrisman: a §1983 claim for unlawful entry; a §1983 claim for use of

19  unreasonable force; a §1983 claim for interference with their right to family society and

20  companionship; a negligence claim; and a gross negligence claim.  The amended

21  complaint in *Fernandez I* asserts three claims against the city: a §1983 claim for

22  unconstitutional policies, customs and failure to screen, hire, train and supervise

23  officers; a negligence claim; and a gross negligence claim.  The city and Chrisman were

24  represented by separate counsel, and the city denied any legal responsibility for the

25  actions of Chrisman in shooting the unarmed suspect.  The court dismissed the claims

26

27

28          [3]According to the parties' briefing, Chrisman is no longer a Phoenix police officer and is
    awaiting trial on criminal charges linked to the events described above.

1  against the city.  The plaintiffs' claims against Chrisman in *Fernandez I* remain pending,
2  and plaintiffs are currently seeking summary judgment against Chrisman.

3       On July 26, 2012, after the city's dismissal from *Fernandez I*, plaintiffs took a
4  deposition of Virgillo.  Plaintiffs indicated at the end of the deposition that they might
5  bring suit against him.[4]  Plaintiffs did not seek leave from the court in *Fernandez I* to
6  modify the scheduling order in that case and allow them to amend the complaint and
7  join Virgillo as a defendant.  Rather, plaintiffs filed this separate lawsuit against Virgillo
8  in state court, which defendant removed to federal court on November 16, 2012.  The
9  complaint in this case alleges four claims against Virgillo: (1) a §1983 claim for unlawful
10 entry; (2) a §1983 claim for unreasonable use of force; (3) a §1983 claim for
11 unreasonable use of force for failure to intervene; and (4) a §1983 claim for interference
12 with the right to family society and companionship.  The complaint in this case does not
13 allege a state law negligence or gross negligence claim against Virgillo. The city is not a
14 named party in this case.  However, the same attorneys who represented the city in
15 *Frenandez I* represent Virgillo and his wife in this case.

16                          **III.  STANDARD OF REVIEW**

17      The court generally has the discretion after weighing the equities of the case "to
18 dismiss a duplicative later-filed action, to stay that action pending resolution of the
19 previously filed action, to enjoin the parties from proceeding with it, or to consolidate
20 both actions."[5]  The court looks at whether the second action involves the same subject
21 matter at the same time in the same court and against the same defendant.[6]

22

23

24      [4]Doc. 3-1 at pp. 69-71.

25      [5]*Adams v. Cal. Dep't of Health Services*, 487 F.3d 684, 688 (2007); *see also Weiner v.
26 Shearson, Hammill & Co., Inc.*, 521 F.2d 817, 820 (9th Cir. 1975) ("Where two federal district
   courts are involved, there has been little trouble in finding a discretionary power to abate the
27 second action.").

28      [6]*Adams,* 487 F.3d at 688-89.

                                        -4-

Similarly, the equitable defense of laches is also a matter that is committed to the sound discretion of the trial court.  Laches is not determined by a strict set of rules, but rather by looking at all the circumstances and weighing the equities.[7]

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[8]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[9]  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."[10]

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]  "The plausibility standard is not akin to a 'probability requirement' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[13]  "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of

---

[7]*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028, 1032 (9th Cir. 1992); *see also Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 834 (9th Cir. 2002) ("[T]he district court's application of the laches factors is entitled to deference, not to be reviewed de novo.").

[8]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[9]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[10]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[11]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[12]*Id.*

[13]*Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

1
2
3

entitlement to relief.'"[14]  "In sum, for a complaint to survive a motion to dismiss, the non-
conclusory 'factual content,' and reasonable inferences from that content, must be
plausibly suggestive of a claim entitling the plaintiff to relief."[15]

4
5
6
7
8

In deciding whether to dismiss a claim under Federal Rule of Civil
Procedure 12(b)(6), the Court is generally limited to reviewing only the complaint, but
may review materials which are properly submitted as part of the complaint and may
take judicial notice of undisputed matters of public record that are outside the
pleadings.[16]

9

## IV.  DISCUSSION

10

### A. Abatement/Abstention/Laches

11
12
13
14
15
16
17
18

Defendant argues that the case should be abated given the pendency of the prior
lawsuit against Chrisman and the city.  Indeed, a plaintiff does not have the right to
maintain two separate actions involving the same subject matter at the same time in the
same court against the same defendant or someone in privity with that defendant.[17]
Grounds for abatement of the later-filed suit exist when there is a pending prior action
"between the same parties, predicated upon the same cause of action and growing out
of the same transaction, and in which identical relief is sought."[18]  Thus, abatement is
similar to the issue of claim preclusion.[19]  In other words, abatement can be considered

19

20

[14]*Id.* (quoting *Twombly*, 550 U.S. at 557).

21

[15]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

22
23
24

[16]*See Gonzalez v. First Franklin Loan Services*, 2010 WL 144862, at *3
(E.D. Cal. Jan. 11, 2010) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir.
2001)); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996); *MGIC Indem. Corp. v.
Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

25

[17]*Adams*, 487 F.3d at 688-89.

26
27

[18]*Stone v. Baum*, 409 F. Supp. 2d 1164, 1177 (D. Ariz. 2005) (quoting *O'Reilly v. Curtis
Pub. Co.*, 31 F.Supp. 364, 364-65 (1940)) (internal quotations omitted).

28

[19]*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (noting
that the doctrine of claim preclusion applies when there is a final judgment on the merits in a

1   if the claims are duplicative, and the test for whether a suit is duplicative is the same

2   test used to see whether claim preclusion applies.  Therefore, when considering

3   whether the later-filed suit is duplicative of the first, the court considers whether the

4   second suit would be precluded pursuant to claim preclusion if we assume that the first

5   suit were already final.[20]

6           While it is clear that this case and *Fernandez I* stem from the same transaction

7   and involve the same subject matter, the parties dispute whether the two cases involve

8   the same defendants or defendants who are in privity with each other.  Privity exists

9   between a nonparty to a prior action and a party to that prior action if: (1) the parties

10  agreed to be bound by the determination of issues; (2) there is a preexisting substantive

11  legal relationship between the nonparty and a party to the judgment, such as

12  succeeding owners of property or assignees and their assignors; (3) the nonparty in the

13  first action was adequately represented by someone with the same interests who was a

14  party to the prior suit; (4) the nonparty assumed control over the prior litigation; (5) the

15  nonparty later brings a lawsuit as the designated representative of a person who was a

16  party to the prior adjudication; or (6) there is a special statutory scheme that expressly

17  forecloses successive litigation by a nonparty, which effectively creates privity.[21]

18          All of the above situations, except for the third one, are obviously inapplicable

19  here.  As for the third situation, whether the nonparty in the first action was adequately

20  represented by someone with the same interest who was a party to the prior suit, this

21

22  case where the same cause of action is involved in both suits and when the parties are identical
    or in privity with each other).
23

24  [20]*Adams*, 487 F.3d at 689 (applying the claim preclusion test to the issue of duplicative
    lawsuits and examining whether the causes of action and relief sought, as well as the parties or
25  privies to the action, are the same).

26  [21]*Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (rejecting virtual representation as the test
    for finding privity in the preclusion context and setting forth six exceptions to the general rule
27  forbidding nonparty preclusion); *In re Consolidated Salmon Cases*, 688 F. Supp. 2d 1001, 1007-
    08 (E.D. Cal. 2010) (applying the privity test set forth in Taylor to determine whether a case
28  should be dismissed as duplicative).

1   court concludes that Virgillo is not in privity with either Chrisman or the city. Chrisman

2   and Virgillo do not share a common interest because, except for the unlawful entry

3   claims, the claims in this case are based on the separate conduct of Virgillo the day

4   Chrisman shot Daniel.  Their interests are not aligned.  As for defendant's assertion that

5   he is in privity with the city, the pending action in *Fernandez I* is only against Chrisman

6   now that the claims against the city have been dismissed.  Furthermore, the claims that

7   plaintiffs brought against the city in *Fernandez I* were separate and distinct from the

8   claims now raised against Virgillo: the claims against the city in *Fernandez I* challenged

9   the conduct of the city itself.  The court cannot find that the city and Virgillo had interests

10  that aligned and that city understood that it was acting in a representative capacity for

11  Virgillo or his actions.

12       Defendant asserts that this lawsuit abuses the judicial process and that this

13  lawsuit was only filed because it would be too late to amend the complaint in

14  *Fernandez I* to add Virgillo based on the scheduling order.  However, even assuming

15  that it would be too late for plaintiffs to amend their complaint in *Fernandez I*, the court

16  cannot dismiss this case as a sanction for avoiding the scheduling order in the prior

17  case, as the Ninth Circuit allows subsequent complaints against defendants after a

18  motion to amend to add those defendants was denied as untimely under a scheduling

19  order.[22]

20       Defendant argues that if not dismissed as duplicative, the complaint should be

21  dismissed on the basis of laches.  Laches is an equitable defense that limits the time in

22  which a party may bring suit.  To establish laches defendant must show plaintiffs' lack of

23  diligence in pursing their claim and that he suffered prejudice as a result.[23]  Assuming

24

25

26       [22]*See Atchison, Topeka and Santa Fe Railway Co. v. Hercules Inc.*, 146 F.3d 1071 (9th
27  Cir. 1998).

28       [23]*Save the Peaks Coalition v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012).

1     that laches is even available in this § 1983 case,[24] the court concludes that there has

2     not been an unreasonable delay or lack of diligence on plaintiffs' part because the

3     parties do not dispute that plaintiffs filed this § 1983 action for damages within the

4     statute of limitations.  "While laches and the statute of limitations are distinct defenses, a

5     laches determination is made with reference to the limitations period for the analogous

6     action at law.  If the plaintiff filed suit within the analogous limitations period, the strong

7     presumption is that laches is inapplicable."[25]  Defendant has not overcome that strong

8     presumption and demonstrated that this case is one of those rare circumstances where

9     laches should be applied to dismiss a suit even though it was filed within the applicable

10    statute of limitations.

11    **B. Rule 12(b) Motion to Dismiss**

12         Defendant argues that the four claims against him—unlawful entry, unreasonable

13    force, failure to intervene, and interference with the right to companionship and society

14    of a child—should be dismissed because he is entitled to qualified immunity in that a

15    reasonable officer in his position could have believed his conduct was lawful based on

16    clearly established federal law.  However, the court is hard-pressed to dismiss a

17    complaint on qualified immunity grounds at this early stage in the litigation.  The

18    purpose of a Rule 12(b)(6) is not to determine if a plaintiff will ultimately prevail, but

19    whether he is entitled to offer evidence to prove the claims.[26]  Without an evidentiary

20    record in this case, the court cannot confidently rule as to whether Virgillo's conduct was

21

22

23

24

---

25

26    [24]*See Floyd v. Oliverson*, 389 Fed. Appx. 641 (9th Cir. 2010) (noting that laches does not apply to an action at law).

27    [25]*Jarrow*, 304 F.3d at 835.

28    [26]*Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

1  reasonable under clearly established federal law, and thus dismissal based on qualified
2  immunity at this stage and in this case is not warranted.[27]

3       Defendant also argues that regardless of his qualified immunity defense, plaintiffs
4  have failed to state a claim for which relief can be granted given the applicable law
5  governing each of the claims against him.  As to the claim for unlawful entry, defendant
6  argues that Ms. Fernandez gave the officers consent to enter the unlocked trailer, and
7  so his entry was in fact lawful based on the consent exception to the warrant
8  requirement.  Plaintiffs argue that Daniel revoked that consent, and thus Virgillo's
9  presence in the home was thereafter unlawful.  Indeed, the complaint alleges that when
10 Chrisman and Virgillo entered the trailer, Daniel told them that he owned the trailer and
11 that they could not be inside his trailer and demanded that they leave.  Defendant
12 argues that Daniel could not revoke consent at that point in the encounter, citing to
13 *Georgia v. Randolph*.[28]

14      In *Randolph* the Supreme Court held that a warrantless search was
15 unreasonable as to a defendant who was physically present at the time his wife gave
16 police permission to search their home, but who unequivocally refused to give his own
17 consent.  The Court concluded that consent given by one occupant is not valid in the
18 face of the refusal of another physically present occupant, distinguishing *United States*
19 *v. Matlock,*[29] which recognized the permissibility of an entry made with the consent of
20 one co-occupant in the other's absence.  "[I]f a potential defendant with self-interest in
21 objecting is in fact at the door and objects, the co-tenant's permission does not suffice
22
23

24      [27] *See Anderson v. Solis*, No. C12-3855, 2013 WL 245232, at *4 (N.D. Cal. Jan. 22,
25 2013) ("A qualified immunity defense is generally not amenable to dismissal under Rule 12(b)(6)
   because facts necessary to establish this affirmative defense generally must be shown by
26 matters outside the complaint.").

27      [28] 547 U.S. 103 (2006).

28      [29] 415 U.S. 164 (1974).

1 | for a reasonable search, whereas the potential objector, nearby but not invited to take

2 | part in the threshold colloquy loses out [on the opportunity to deny consent]."[30]

3 |       Defendant argues that because Daniel was not present during the initial colloquy

4 | between the officers and Ms. Fernandez when she gave them consent to enter, it was

5 | too late for him to object to the officers' entry.  Although Daniel was not present right

6 | when his mom told the officers that the door was unlocked, he did immediately object to

7 | their entry when they stepped inside and told him that he was the owner of the trailer.

8 | As the Court noted in *Randolph*, "a warrantless search of a shared dwelling for evidence

9 | over the express refusal of consent by a physically present resident cannot be justified

10 | as reasonable as to him on the basis of consent given to the police by another

11 | resident."[31]  The Sixth Circuit, in an unpublished opinion, found that a co-tenant who

12 | objected shortly after his fellow co-tenant consented, but right when a police officer

13 | entered his home, was not simply a nearby "potential objector" but was instead

14 | sufficiently present at the time of consent to effectively object to that consent, applying

15 | *Randolph's* rationale to the situation.[32]  The court persuasively concluded that such an

16 | objection is sufficiently contemporaneous and effectively contradicts a co-tenant's

17 | consent; thus, it found that the officer's warantless entry and search in that case was

18 | unconstitutional.  The court also noted that the co-tenant's objection at least operated

19 | as a withdrawal of the earlier consent and restricted the scope of the entry and search.[33]

20 | There is no Ninth Circuit precedent governing the precise situation at issue here, but the

21 | court concludes that plaintiffs' claim of unlawful entry is at least plausible given that the

22 | rationale in *Randolph* could apply to the situation at hand.

25 | [30]*Id.* at 120-21.

26 | [31]*Id.* at 120.

27 | [32]*United States v. Tatman*, 397 Fed.Appx. 152, 160-62 (6th Cir. 2010).

28 | [33]*Id.* at 162-63.

1    As to the claim for unreasonable force based on Virgillo's use of his Taser

2    against Daniel, the defendant only asserts that qualified immunity prevents plaintiffs

3    from recovering.  As discussed above, the court concludes that dismissal based

4    qualified immunity before the submission of evidence is not warranted in this case.

5    Plaintiff states at least a plausible claim of relief.

6    Plaintiffs' claim for failure to intervene is also plausible given that the complaint

7    alleges Virgillo knew Chrisman was going to kill Daniel and left the "danger zone," which

8    plausibly suggests that Virgillo may have had a realistic opportunity to intervene.[34]

9    Whether or not Virgillo had the realistic opportunity to intervene requires a review of the

10    evidence and is not for the court to determine in this 12(b)(6) analysis.

11    Finally, plaintiffs' claim against Virgillo for depriving them of their right to the

12    companionship and society of their child at least states a plausible claim for relief.

13    "Official conduct that 'shocks the conscience' in depriving parents of that interest is

14    cognizable as a violation of due process."[35]  Whether excessive force is sufficiently

15    shocking depends on whether the official realistically had time to deliberate his

16    actions.[36]  If an officer makes a snap judgment, his conduct is only sufficiently shocking

17    if he acted "with a purpose to harm unrelated to legitimate law enforcement

18    objectives."[37]  Plaintiff has alleged that Virgillo's actions—tasing Daniel to de-escalate

19    the situation and failing to intervene despite knowing that his partner was going to shoot

20    Daniel—were intentional and deliberately injurious.  Keeping the 12(b)(6) standards in

21    mind, the court concludes that the complaint sets forth at least a plausible claim and

22    dismissal is not warranted on this claim at this time.

23    _____

24    [34]*Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000) (holding that the
     evidence in that case demonstrated that the non-shooting officers did not have a realistic
25    opportunity to intercede and therefore could not be held liable for failing to stop the shooting).

26    [35]*Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

27    [36]*Id.*

28    [37]*Id.*

**V.  CONCLUSION**

Based on the foregoing analysis, defendant's motion to dismiss at docket 3 is **DENIED**.


DATED this 15th day of February 2013.


_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE