1
2
3
4
5
6
7                    **UNITED STATES DISTRICT COURT**

8                       **DISTRICT OF ARIZONA**

9
10
11   **Elvira Fernandez, individually and as**       )
     **Co-Personal Representative of the**           )
12   **Estate of Daniel Frank Rodriguez;**           )
     **Frank Rodriguez, individually and as**        )
13   **Co-Personal Representative of the**           )
     **Estate of Daniel Frank Rodriguez,**           )
14                                                   )
                 **Plaintiffs,**                     )    **2:12-cv-02475 JWS**
15                                                   )
           **vs.**                                  )    **ORDER AND OPINION**
16                                                   )
     **Sergio Virgillo and Maria Virgillo**          )
17   **husband and wife,**                           )    **[Re: Motion at Docket 33]**
                                                     )
18               **Defendants.**                     )
                                                     )
19   _____)

20                    **I.  MOTION PRESENTED**

21          At docket 33, Plaintiffs Elvira Fernandez and Frank Rodriguez, both acting

22   individually and as co-personal representatives of the Estate of Daniel Frank Rodriguez,

23   ("Plaintiffs") filed a motion for summary judgment on Count 1 of their Amended

24   Complaint.  Count One is a § 1983 claim for unlawful entry, which alleges that

25   Defendant Sergio Virgillo, a police officer with the Phoenix Police Department,

26   unlawfully entered the home of their son, Daniel Frank Rodriguez ("Rodriguez"), in

27   violation of his Fourth Amendment privacy rights.  They allege that as a result of

28

1  Virgillo's wrongful conduct, the Estate of Rodriguez has suffered damages.[1]   Defendant

2  responds at docket 53.  Plaintiffs reply at docket 57.  Oral argument was not requested

3  and would not be of assistance to the court.

4  ## II.  BACKGROUND

5      On October 5, 2010, Elvira Fernandez ("Fernandez") called 911 concerning her

6  son, Rodriguez.  In the call, Fernandez stated her son was acting violently, throwing

7  things, and hurting her dog.  She stated that he was violent and that she was afraid he

8  would hurt her and afraid for her life.  She had left her trailer and was at the neighbor's

9  trailer making the call.  Virgillo, a Phoenix Police Officer, and Richard Chrisman

10 ("Chrisman"), who was also a Phoenix Police Officer at the time, responded to the call.

11 They first went to the neighbor's home to talk to Fernandez.  It is undisputed that at a

12 minimum Fernandez told the officers that Rodriguez was acting violently and threw

13 something at the wall of the trailer.  She wanted the officers to get Rodriguez to leave

14 the trailer.

15     The officers went next door and knocked, but Rodriguez did not respond.  The

16 officers returned to the neighbor's home to speak to Fernandez.  She told the officers

17 that the door to her trailer was unlocked and gave them permission to go inside.  The

18 two officers returned to the trailer and knocked again.  When no one responded,

19 Chrisman opened the door, announced himself, and asked Rodriguez to step outside to

20 talk.

21     Rodriguez appeared and shouted at the officers, telling them they did not have a

22 right to be in his trailer and to leave.  As Rodriguez tried to shut the door, Chrisman

23 stopped him from doing so and a verbal and physical altercation occurred inside the

24 home.[2]  It is undisputed that early in the encounter Chrisman pulled a gun out and at

25

26     [1]Doc. 1-1 at pp. 4-5.

27     [2]The evidence presented shows that Chrisman and Virgillo have differing recollections
28 as to exactly when they entered the home.  Chrisman asserts that he did not actually enter the
   home until Rodriguez tried to shut the door.  Virgillo asserts that the two officers were inside or

1   least pointed it in the direction of Rodriguez.[3]  Chrisman then re-holstered his gun and

2   engaged in a physical struggle with Rodriguez.  He resisted Chrisman's attempts to

3   restrain him, which led to Chrisman spraying pepper spray at Rodriguez who was not

4   deterred and continued to resist compliance.  Chrisman and Virgillo used their tasers

5   against Rodriguez who fell down momentarily.

6         Virgillo then talked to Rodriguez to try and calm the situation, suggesting they

7   step outside or that he give him a ride somewhere.  Rodriguez said he wanted to go to

8   his father's house and that he would ride his bike.  Rodriguez walked towards his

9   bicycle, which was against the wall of the living room.  Virgillo moved back to the

10   threshold of the door so Rodriguez could get his bike to the front door.  As Rodriguez

11   wheeled the bike toward the officers, Chrisman grabbed Rodriguez over the bike.

12   Rodriguez's dog began barking, and Chrisman pulled out his gun and shot the dog.

13   Rodriguez became upset, yelling at Chrisman about the dog.  About five seconds later,

14   Chrisman aimed his gun at Rodriguez and shot twice, killing Rodriguez.

15         Plaintiffs filed a lawsuit against Chrisman and the City of Phoenix (the "City").

16   The City and Chrisman were represented by separate counsel, and the City denied any

17   legal responsibility for the actions of Chrisman in shooting the unarmed suspect.  The

18   court dismissed the claims against the City.

19         On July 26, 2012, after the City's dismissal from the first case, Plaintiffs filed this

20   separate lawsuit against Virgillo in state court, which he removed to federal court on

21   November 16, 2012.  The complaint in this case alleges four claims against Virgillo:

22   (1) a § 1983 claim for unlawful entry; (2) a §1983 claim for unreasonable use of force;

23

24

25   just walking into the home as Rodriguez began shouting at them to get out.

26         [3]Again, the officers' testimonies are differing as to the first time Chrisman pulled the gun

27   out.  Chrisman asserts he pointed the gun at a barking and aggressive-looking dog and told
      Rodriguez to call the dog off and then waved the gun toward Rodriguez.  Virgillo asserts that

28   Chrisman pointed the gun directly at Rodriguez's head.

1  (3) a § 1983 claim for unreasonable use of force for failure to intervene; and (4) a

2  § 1983 claim for interference with the right to family society and companionship.

3        Plaintiffs' motion for summary judgment at docket 33 asks the court to grant

4  summary judgment in their favor as to Count One.  Plaintiffs argue that Rodriguez told

5  the officers they could not enter his home without a warrant, revoking his mother's prior

6  consent to enter, and that there was no exigency that would otherwise provide them

7  with the authority to do so.  Defendant argues that this particular § 1983 claim based on

8  unlawful entry under the Fourth Amendment does not survive decedent's death or,

9  alternatively, that his entry was lawful under the Fourth Amendment based on dicta in

10  *Georgia v. Randolph*[4] or on the exigencies that existed at the time of his entry.

11  Defendant also argues that, at a minimum, he is entitled to qualified immunity on the

12  unlawful entry claim.

13        Defendant recently filed his own motion for summary judgment at docket 63,

14  asking that all counts in the complaint be resolved in his favor.  That motion has not yet

15  been fully briefed.

16  ### III.  STANDARD OF REVIEW

17        Summary judgment is appropriate where "there is no genuine dispute as to any

18  material fact and the movant is entitled to judgment as a matter of law."[5]  The

19  materiality requirement ensures that "only disputes over facts that might affect the

20  outcome of the suit under the governing law will properly preclude the entry of summary

21  judgment."[6]  Ultimately, "summary judgment will not lie if the . . . evidence is such that a

22  reasonable jury could return a verdict for the nonmoving party."[7]  However, summary

23  judgment is mandated under Rule 56(c) "against a party who fails to make a showing

24

25      [4]547 U.S. 103 (2006).

26      [5]Fed. R. Civ. P. 56(a).

27      [6]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

28      [7]*Id.*

-4-

1  sufficient to establish the existence of an element essential to that party's case, and on

2  which that party will bear the burden of proof at trial."[8]

3       The moving party has the burden of showing that there is no genuine dispute as

4  to any material fact.[9]  The moving party need not present evidence; it need only point

5  out the lack of any genuine dispute as to material fact.[10]  Once the moving party has

6  met this burden, the non-moving party must set forth evidence of specific facts showing

7  the existence of a genuine issue for trial.[11]  All evidence presented by the non-movant

8  must be believed for purposes of summary judgment, and all justifiable inferences must

9  be drawn in favor of the non-movant.[12]  However, the non-moving party may not rest

10 upon mere allegations or denials, but must show that there is sufficient evidence

11 supporting the claimed factual dispute to require a fact-finder to resolve the parties'

12 differing versions of the truth at trial.[13]

13                              **IV.  DISCUSSION**

14       Defendant argues that the court should deny Plaintiffs' request for summary

15 judgment on Count One, because as a matter of law the § 1983 claim based on

16 unlawful entry does not survive Rodriguez's death under Arizona law.  Section 1983 is

17 silent on the issue of survival; therefore, pursuant to 42 U.S.C. § 1988, the court applies

18 the applicable state survivorship statute so long as the application of that law is not

19 inconsistent with the policies of § 1983.[14]

20

21  _____

22  [8]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

23  [9]*Id.* at 323.

24  [10]*Id.* at 323-25.

25  [11]*Anderson,* 477 U.S. at 248-49.

26  [12]*Id.* at 255.

27  [13]*Id.* at 248-49.

28  [14]*Robertson v. Wegmann*, 436 U.S. 584, 588-91 (1978).

-5-

The court must first catagorize Plaintiffs' §1983 claim and identify the most analogous state law claim.[15]  Here, Count One alleges unlawful entry in violation of the Fourth Amendment.  Plaintiffs assert that Virgillo entered Rodriguez's home without a warrant, proper consent, or exigent circumstances in violation if Rodriguez's Fourth Amendment rights.  As thoroughly explained by the Seventh Circuit in *Bentz v. City of Kendallville*,[16] the most analogous state claim to a § 1983 claim based on unlawful entry is one for invasion of privacy.[17]  "[T]he crux of a Fourth Amendment claim of this nature, whether framed as an unlawful search, an unreasonable entry into the home, or any other similar action, is invasion of privacy."[18]  Plaintiffs do not argue otherwise; Count One of their complaint specifically alleges that Defendant invaded Rodriguez's privacy.[19]

The court must next determine whether an invasion of privacy claim would survive under Arizona law.  It would not.  Arizona's survival statute, A.R.S. § 14-3110, provides:

> Every cause of action, **except a cause of action for** damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or **invasion of the right of privacy**, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.[20]

---

[15]*See Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009) (citing *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985)).

[16]*Bentz*, 577 F.3d at 781-83.

[17]A person is liable for invasion of privacy if he or she intentionally intrudes upon the solitude of seclusion of another if that intrusion would be highly offensive to a reasonable person.  *See Hart v. Seven Resorts, Inc.*, 947 P.2d 846, 853 (Ariz. Ct. App. 1997) (citing Restatement (Second) of Torts §652B (1977)).

[18]*Bentz*, 577 F.3d at 781.

[19]Doc. 1-1 at ¶ 27.

[20]Ariz. Rev. Stat.  § 14-3110 (emphasis added).

1   Thus, while most causes of action survive the death of the victim, a claim for invasion of
2   the right to privacy is one that does not.  Again, Plaintiffs do not argue otherwise.

3          Instead, Plaintiffs argue that even if Arizona's survivorship statute would not
4   allow an analogous invasion of privacy claim under state law to proceed, the court may
5   not apply the statute to their federal § 1983 claim because to do so would be
6   inconsistent with the policies underlying § 1983.  "The policies underlying § 1983
7   include compensation of persons injured by deprivation of federal rights and prevention
8   of abuses of power by those acting under color of state law."[21]  Plaintiffs argue that the
9   application of Arizona's survivorship statute to bar their § 1983 unlawful entry claim
10  would essentially foreclose any Fourth Amendment claim based on the right to privacy,
11  which would thwart both of the policies underlying § 1983.

12         The parties do not cite, nor can this court find any cases dealing with the
13  compatibility of survivorship laws and § 1983 when the issue is the abatement of a
14  claim based on an invasion of privacy.  While the Seventh Circuit in *Bentz* determined
15  that the plaintiff's §1983 claim for unlawful entry did not survive under Indiana's
16  survivorship law and thus dismissed the federal action, it did not have the occasion to
17  consider whether the application of that state law was consistent with the purpose
18  behind § 1983 because the plaintiff in that case, unlike here, did not make such an
19  argument.  The Supreme Court, however, has provided some guidance on the issue of
20  compatibility that the court must consider.

21         In *Robertson v. Wegmann*, the plaintiff asserted a § 1983 claim for relief in
22  federal district court in Louisiana but died after commencing the action in a manner
23  unrelated to defendant's alleged constitutional violation.  The plaintiff did not have any
24  immediate family, but his personal representative continued the action in his place.
25  Under Louisiana law, the action would be abated because the Louisiana survivorship
26  statute only allows immediate family members to be substituted as plaintiff in cases not

27  _____

28         [21]*Robertson*, 436 U.S. at 590-91.

-7-

1    involving property damage.  The Court held that Louisiana's survivorship law was

2    consistent with § 1983 and should apply even though it meant abatement of plaintiff's

3    cause of action and no compensation for the alleged violation.  The Court relied on the

4    fact that most causes of action survived under the law, and thus it was not generally

5    inhospitable to § 1983 claims.[22]  The court was careful to note, however, that its holding

6    was "limited to situations in which no claim is made that state law generally is

7    inhospitable to survival of § 1983 actions and in which the particular application of state

8    survivorship law, while it may cause abatement of the action, has no independent

9    adverse effect on the policies underlying § 1983,"[23] stressing that its holding did not

10   address "whether abatement based on state law could be allowed in a situation in which

11   deprivation of federal rights caused death."[24]

12        Plaintiffs argue that *Robertson* is distinguishable because the state survivorship

13   statute merely placed limitations on who could bring a survival claim, unlike here, where

14   the state statute precludes a whole category of § 1983 claims.  The court finds that

15   *Robertson* is nonetheless persuasive authority.  *Robertson* set forth what the relevant

16   inquiry is when determining the compatibility of state survivorship law with the policies

17   of § 1983 in situations where the alleged deprivation of federal rights did not cause

18   death.  The Court noted that a state survivorship statute might be found to conflict with

19   the policies of § 1983 if it does not provide for the survival of any tort actions or it

20   significantly restricts the types of actions that survive.[25]  It stressed that simply because

21   the application of a state survivorship law abates a particular plaintiff's § 1983 claim and

22

23

24   _____

25   [22]*Robertson,* 436 U.S. at 591.

26   [23]*Id.* at 594.

27   [24]*Id.*

28   [25]*Id.*

-8-

prevents compensation does not mean that it is inconsistent with the federal law.[26]

Thus, based on *Robertson*, when determining issues of compatibility, the court looks to

whether the state law is *generally* inhospitable to § 1983 claims, not whether a

particular § 1983 claim survives or not.

Here, the court concludes that A.R.S. § 14-3110, the state's survivorship statute,

is not generally inhospitable to § 1983 actions.  Most tort actions survive under the state

law.  Furthermore, while at the heart of this case is a death that resulted from an officer

shooting, the claim at issue in the motion at hand is only Count One, which is distinct

from Plaintiffs' excessive force claim.  It is a claim of unlawful entry in violation of

Rodriguez's Fourth Amendment privacy rights, which is not the constitutional violation

that caused Rodriguez's death.  Abating *unlawful entry* claims after the victim's death

does not adversely affect the deterrence goals of § 1983.  Unlawful entry, unlike

excessive force, is not likely to cause death in and of itself, and an officer contemplating

an illegal entry will certainly have to be prepared to face the prospect of a § 1983 claim

being filed against him by a living victim.  Thus, the line of cases concluding that it is

inconsistent with § 1983 to apply state survivorship laws that preclude pain and

suffering damages from being asserted by survivors or estates upon the death of the

victim when the alleged deprivation of rights caused the victim's death are not

relevant.[27]

---

[26] "A state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation.  If success of the § 1983 action were the only benchmark, there would be no reason at all to look to state law, for the appropriate rule would then always be the one favoring the plaintiff, and its source would be essentially irrelevant."  *Id.* at 593.

[27] *See Gotbaum v. City of Phoenix*, 617 F.  Supp.  2d 878 (D. Ariz. 2008) (holding that Arizona's survival statute's elimination of pain and suffering damages would not be applied to the § 1983 claim where the alleged constitutional deprivation caused death); *Braillard v. Maricopa County*, 232 P.3d 1263, 1277 (Ariz. Ct. App. 2010) (in situations where the alleged constitutional violation caused death, the overwhelming majority of courts have concluded it would be inconsistent with the purposes of § 1983 to bar pain and suffering damages under state survivorship laws).

1

## V.  CONCLUSION

Based on the preceding discussion, Plaintiffs' Motion for Summary Judgment is **DENIED**.  Given that as a matter of law Plaintiffs' unlawful entry claim in Count One does not survive death under A.R.S. § 14-3110, summary judgment in favor of Defendant as to Count One is warranted.[28]  Count One is hereby **DISMISSED**.

DATED this 3rd day of March 2014.

_____
/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[28]*Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (if the nonmoving party is entitled to judgment as a matter of law, the court may enter summary judgment sua sponte against the moving party as long as the opposing party has had a full and fair opportunity to brief the issues involved.).