# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Elvira Fernandez, individually and as Co-Personal Representative of the Estate of Daniel Frank Rodriguez; Frank Rodriguez, individually and as Co-Personal Representative of the Estate of Daniel Frank Rodriguez, <br><br> Plaintiffs, <br><br> vs. <br><br> Sergio Virgillo and Maria Virgillo husband and wife, <br><br> Defendants. | 2:12-cv-02475 JWS <br><br> **ORDER AND OPINION** <br><br> [Re: Motion at Docket 46] |

## I.  MOTION PRESENTED

At docket 46, Plaintiffs Elvira Fernandez and Frank Rodriguez, both acting individually and as co-personal representatives of the Estate of Daniel Frank Rodriguez, ("Plaintiffs") filed a motion for summary judgment on the issue of Defendant Sergio Virgillo's ("Defendant" or "Virgillo") qualified immunity defense as to their § 1983 claim for failure to intervene.  Defendant responds at docket 58.  Plaintiffs reply at docket 60. Oral argument was not requested and would not be of assistance to the court.

## II.  BACKGROUND

On October 5, 2010, Elvira Fernandez ("Fernandez") called 911 concerning her son, Daniel Frank Rodriguez ("Rodriguez").  In the call, Fernandez stated her son was acting violently, throwing things, and hurting her dog.  She stated that he was violent and that she was afraid he would hurt her and afraid for her life.  She had left her trailer and was at the neighbor's trailer making the call.  Virgillo, a Phoenix Police Officer, and Richard Chrisman ("Chrisman"), who was also a Phoenix Police Officer at the time, responded to the call.  They first went to the neighbor's home to talk to Fernandez.  It is undisputed that at a minimum Fernandez told the officers that Rodriguez was acting violently and threw something at the wall of the trailer.  She wanted the officers to get Rodriguez to leave the trailer.

The officers went next door and knocked, but Rodriguez did not respond.  The officers returned to the neighbor's home to speak to Fernandez.  She told the officers that the door to her trailer was unlocked and gave them permission to go inside.  The two officers returned to the trailer and knocked again.  When no one responded, Chrisman opened the door, announced himself, and asked Rodriguez to step outside to talk.

Rodriguez appeared and shouted at the officers, telling them they did not have a right to be in his trailer and to leave.  As Rodriguez tried to shut the door, Chrisman stopped him from doing so and a verbal and physical altercation occurred inside the home.[1]  It is undisputed that early in the encounter Chrisman pulled a gun out and at least pointed it in the direction of Rodriguez.[2]   Chrisman then re-holstered his gun and

---

[1] The evidence presented shows that Chrisman and Virgillo have differing recollections as to exactly when they entered the home.  Chrisman asserts that he did not actually enter the home until Rodriguez tried to shut the door.  Virgillo asserts that the two officers were inside or just walking into the home as Rodriguez began shouting at them to get out.

[2] Again, the officers' testimonies are differing as to the first time Chrisman pulled the gun out.  Chrisman asserts he pointed the gun at a barking and aggressive-looking dog and told Rodriguez to call the dog off and then waved the gun toward Rodriguez.  Virgillo asserts that

engaged in a physical struggle with Rodriguez. He resisted Chrisman's attempts to restrain him, which led to Chrisman spraying pepper spray at Rodriguez who was not deterred and continued to resist compliance. Chrisman and Virgillo used their tasers against Rodriguez who fell down momentarily.

Virgillo then talked to Rodriguez to try and calm the situation, suggesting they step outside or that he give him a ride somewhere. Rodriguez said he wanted to go to his father's house and that he would ride his bike. Rodriguez walked towards his bicycle, which was against the wall of the living room. Virgillo moved back to the threshold of the door so Rodriguez could get his bike to the front door. As Rodriguez wheeled the bike toward the officers, Chrisman grabbed Rodriguez over the bike. Rodriguez's dog began barking and Chrisman pulled out his gun and shot the dog. Rodriguez became upset, yelling at Chrisman about the dog. About five seconds later, Chrisman aimed his gun at Rodriguez and shot twice, killing Rodriguez.

Plaintiffs filed a lawsuit against Chrisman and the City of Phoenix (the "City"). The City and Chrisman were represented by separate counsel, and the City denied any legal responsibility for the actions of Chrisman in shooting the unarmed suspect. The court dismissed the claims against the City.

On July 26, 2012, after the City's dismissal from the first case, Plaintiffs filed this separate lawsuit against Virgillo in state court, which he removed to federal court on November 16, 2012. The complaint in this case alleges four claims against Virgillo: (1) a § 1983 claim for unlawful entry; (2) a § 1983 claim for unreasonable use of force; (3) a § 1983 claim for unreasonable use of force for failure to intervene; and (4) a § 1983 claim for interference with the right to family society and companionship.

Plaintiffs filed the motion for summary judgment at docket 46, requesting that the court rule in their favor on the issue of whether Virgillo can raise qualified immunity as a defense to their § 1983 claim for failure to intervene. In their motion, Plaintiffs argue

---

Chrisman pointed the gun directly at Rodriguez's head.

that based on Virgillo's own testimony, Virgillo suspected that Chrisman would kill Rodriguez given Chrisman's aggressive actions, but that Virgillo nonetheless failed to intervene to prevent the shooting. They argue such actions were clearly unconstitutional. Virgillo argues that viewing the evidence in light most favorable to him, the non-moving party here, the motion should be denied because the evidence does not show that Virgillo had the opportunity to intervene to stop the shooting given how rapidly the situation unfolded. Alternatively, Defendant argues that there are at least disputed facts about whether Virgillo failed to intervene or had the opportunity to do so.

Defendant recently filed his own motion for summary judgment at docket 63, based in part on qualified immunity grounds. That motion has not yet been fully briefed.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[4] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[6]

---

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[7] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[8] Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[9] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[10] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[11]

## IV.  DISCUSSION

Plaintiffs ask the court to rule that Virgillo cannot assert a qualified immunity defense in relation to their § 1983 failure-to-intercede claim. In determining whether a government official is entitled to qualified immunity the court must consider "(1) whether, taking the facts in the light most favorable to the nonmoving party, the government official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct."[12] If the conduct did not violate a constitutional right, or if it did violate a constitutional right but that right was not clearly established at the time of the misconduct, qualified immunity applies and the

---

[7] *Id.* at 323.

[8] *Id.* at 323-25.

[9] *Anderson,* 477 U.S. at 248-49.

[10] *Id.* at 255.

[11] *Id.* at 248-49.

[12] *C.F. ex. rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986 (9th Cir. 2011).

officer cannot be held liable for damages.[13]  As to the first consideration, Plaintiffs argue that Virgillo's conduct violated Rodriguez's constitutional rights because he failed to intervene in contravention of his duty when Chrisman shot Rodriguez in his presence; thus, they argue, he is liable for the violation of Rodriguez's constitutional rights to the same extent as Chrisman is liable.

Police officers have a duty to intervene when fellow officers violate the constitutional rights of a citizen in their presence, and when they fail to do so they can be liable for that constitutional violation.[14]  However, a police officer can only be held liable under § 1983 for the constitutional violation if he or she had a realistic opportunity to intervene.[15]  In determining whether an officer should have intervened to stop a constitutional violation, the court should consider whether the bystanding officer was aware of the specific risk of harm to the citizen and whether that officer had the time and opportunity to intervene.[16]  Another relevant factor in a situation where a defendant officer is alleged to have failed to act in the presence of excessive force by other officers is whether the defendant can be said to have tacitly collaborated with the officers using force.[17]

Virgillo put forth evidence to show that Chrisman's shooting of Rodriguez happened quickly.  Chrisman pulled his gun to shoot the dog and then within five seconds turned the gun on Rodriguez, shooting him twice almost simultaneously.  Based on this evidence, Virgillo argues that he did not have the time or opportunity to

---

[13]*Id.*

[14]*Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

[15]*Id.* at 1289-90.

[16]*See United States v. Reese*, 2 F.3d 870, 890 (9th Cir. 1993); *Ting v. United States*, 927 F.2d 1504, 1511-12 (9th Cir. 1991).

[17]*See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (finding that the confrontation was not an "episode of sufficient duration to support a conclusion that an officer who stood by without trying to assist the victim became a tacit collaborator").

intervene or, at a minimum, that a reasonable jury could find that he did not have the time or opportunity to intervene and thus that there was no constitutional violation on his part. Plaintiffs, however, point to Virgillo's testimony where Virgillo said he had a feeling Chrisman was going to shoot Rodriguez when Chrisman first pulled out his gun, and they argue that Virgillo should have intervened at that time to prevent the escalation.

While Chrisman's conduct at the beginning of the encounter with Rodriguez may have amounted to an unconstitutional seizure or excessive force, the injury-causing constitutional violation was when Chrisman pulled his gun the second time and fired the first shot and that is when the duty to intervene would have triggered with sufficient opportunity. Viewing the evidence in favor of Defendant, there is at least an issue of fact as to whether Virgillo had the time or opportunity to intervene; the court cannot conclude that Virgillo undisputedly had an opportunity to intervene. Indeed, whether there was a realistic opportunity to intervene is typically an issue for the jury.[18]

However, even assuming that Virgillo's duty to intervene arose at the beginning of the encounter, when Chrisman first pulled out the gun, there is evidence that Chrisman put the gun away on his own volition, removing the need for Virgillo's intervention. Furthermore, the evidence shows that Virgillo was not idle during the encounter and took steps to get Rodriguez calm and away from the scene. Plaintiffs do not address this evidence, nor do they explain what the appropriate intervention should have been in light of the evidence. Thus, assuming the duty arose at the beginning of the encounter when Chrisman began acting aggressively, the court concludes that there is an issue of fact as to whether Virgillo failed to intervene in contravention of his duty.

---

[18]*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

Plaintiffs acknowledge in their reply brief that the issue of whether Virgillo had a realistic opportunity to intervene is an issue for the jury and stress in their reply that they are not seeking summary judgment on the underlying failure-to-intervene claim. What they seek from the court is a ruling that Virgillo can be brought to trial on the underlying § 1983 claim for failure to intervene, at which time the jury will consider the issues of opportunity. In other words, despite their briefing on whether there was a constitutional violation on the part of Virgillo, they only want the court to consider the second element of the qualified immunity test—whether Virgillo's conduct in failing to intervene violated clearly established law. The court declines to do so at this time. Virgillo has recently filed a motion for summary judgment at docket 63 based in part on qualified immunity. Unlike Plaintiffs' motion, Virgillo filed the motion after completion of all discovery. The court opts to consider the issue of qualified immunity from the typical procedural posture—raised by the defendant in a motion—and with the benefit of full discovery, including expert discovery. The motion has yet to be fully briefed. It may be that Virgillo is entitled to qualified immunity because his conduct was constitutionally permissible or because it did not violate clearly established rights. The court will decide the qualified immunity issue when it decides Virgillo's motion.

## V.  CONCLUSION

Based on the preceding discussion, Plaintiffs' Motion for Summary Judgment on Qualified Immunity is **DENIED**.

DATED this 3rd day of February 2014.

/s/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE