UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Elvira Fernandez, individually and as as Co-Personal Representative of the Estate of Daniel Frank Rodriguez; Frank Rodriquez, individually and as Co-Personal Representative of the Estate of Daniel Frank Rodriguez,<br><br>           Plaintiffs,<br><br>     vs.<br><br>Sergio Virgillo and Maria Virgillo husband and wife,<br><br>           Defendants. | 2:12-cv-02475 JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 63] |

## I.  MOTION PRESENTED

At docket 63 defendant Sergio Virgillo[1] ("Virgillo") moves for summary judgment against plaintiffs Elvira Fernandez and Frank Rodriquez (collectively, "plaintiffs"). Plaintiffs oppose at docket 69.  Virgillo filed a reply at docket 73.  Oral argument was not requested and would not assist the court.

---

[1] Maria Virgillo is also a named defendant, but the parties refer only to Sergio Virgillo in their briefing. For consistency, the court does the same.

## II. BACKGROUND

On October 5, 2010, Fernandez called 911 concerning her son, Daniel Frank Rodriguez ("Rodriguez"). In the call, Fernandez stated her son was acting violently, throwing things, and hurting her dog. She stated that he was violen, that she was afraid he would hurt her, and that she was afraid for her life. She had left her trailer and was at the neighbor's trailer making the call. Virgillo, a Phoenix Police Officer, and Richard Chrisman ("Chrisman"), who was also a Phoenix Police Officer at the time, responded to the call. They first went to the neighbor's home to talk to Fernandez. It is undisputed that, at a minimum, Fernandez told the officers that Rodriguez was acting violently and threw something at the wall of the trailer. She wanted the officers to get Rodriguez to leave the trailer.

The officers went next door and confronted Rodriguez. When Rodriguez came to the door, Chrisman explained that they were there to investigate a domestic violence call, and they needed to talk with him outside the trailer. Rodriguez replied that he was not going anywhere. Early in the encounter Chrisman pulled a gun out and at least pointed it in the direction of Rodriguez.[2] Chrisman then re-holstered his gun and engaged in a physical struggle with Rodriguez. He resisted Chrisman's attempts to restrain him, which led to Chrisman spraying pepper spray at Rodriguez, who was not deterred and continued to resist. Chrisman and Virgillo used their tasers against Rodriguez, who fell down momentarily.

Virgillo then talked to Rodriguez to try and calm the situation, suggesting they step outside or that he give him a ride somewhere. Rodriguez said he wanted to go to his father's house and that he would ride his bicycle. Rodriguez walked towards his bike, which was against the wall of the living room. Virgillo moved back to the threshold

---

[2] The officers' testimonies differ as to the first time Chrisman pulled the gun out. Chrisman asserts he pointed the gun at a barking and aggressive-looking dog and told Rodriguez to call the dog off. Virgillo asserts that Chrisman pointed the gun directly at Rodriguez's head.

of the door so Rodriguez could get his bike to the front door. As Rodriguez wheeled the bike toward the officers, Chrisman grabbed Rodriguez over the bike. Rodriguez's dog began barking, and Chrisman pulled out his gun and shot the dog. Rodriguez became upset and argued with Chrisman over the dog's shooting. About five seconds later Chrisman raised his gun, turned toward Rodriguez, and pointed his gun at him. Rodriguez backed away. As Virgillo instinctively averted his eyes, Chrisman shot Rodriguez twice, killing him.

Plaintiffs sued Chrisman and the City of Phoenix ("the City") in an action referred to here as *Fernandez I*[3] that was removed to federal district court. Plaintiffs' amended complaint asserted five claims against Chrisman[4] and three claims against the city.[5] Although the district court dismissed plaintiffs' claims against the City, it granted them summary judgment against Chrisman on four claims. Specifically, the court ruled that Chrisman violated Rodriguez's right to be free from unlawful searches and excessive uses of force and that Chrisman was culpable of negligent and grossly negligent use of deadly force.[6] After the court's summary judgment ruling, the parties settled the remaining familial association claim and stipulated to the entry of judgment in favor of plaintiffs against Chrisman.[7]

---

[3] Case No. 2:11-cv-2001 FJM (D. Az.)

[4] (1) A § 1983 claim for unlawful entry; (2) a § 1983 claim for use of unreasonable force; (3) a § 1983 claim for interference with their right to family society and companionship; (4) a negligence claim; and (5) a gross negligence claim.

[5] (1) A § 1983 claim for unconstitutional policies, customs, and failure to screen, hire, train, and supervise officers; (2) a negligence claim; and (3) a gross negligence claim.

[6] Doc. 64-8 at 5–7.

[7] The judgment provides that the Rodriguez Estate would recover from Chrisman "compensatory damages, costs and attorneys' fees on the Estate's federal civil rights claims alleged in this action, in the total amount of $3,300,000.00." The judgment also awards Fernandez "compensatory damages on her individual claims in the amount of $3,200,000.00," and Rodriguez "compensatory damages on his individual claims in the amount of $2,000,000.00." Stipulated Final Judgment, *Fernandez v. Phoenix*, No. 2:11-cv-02001-FJM (D.

In addition to *Fernandez I*, plaintiffs brought this separate action against Virgillo, which was filed in state court and removed to federal court. Plaintiffs' complaint in this case alleges four claims against Virgillo: (1) a § 1983 claim for unlawful entry; (2) a § 1983 claim for unreasonable use of force; (3) a § 1983 claim for unreasonable use of force for failure to intervene; and (4) a § 1983 claim under the Fourteenth Amendment for interference with the right to family society and companionship. On March 4, 2014 the court dismissed plaintiffs' unlawful entry claim on the basis that as a matter of law it does not survive Rodriguez's death under A.R.S. § 14-3110.[8]

Virgillo now moves for summary judgment on the plaintiffs' remaining claims, arguing that: (1) this action is barred under the doctrine of res judicata; (2) Virgillo is entitled to qualified immunity; (3) plaintiffs' familial interference claim fails for the lack of evidence of Virgillo's purpose to harm; (4) plaintiffs are not entitled to punitive damages; and (5) plaintiffs' request for pre-death pain and suffering damages is barred by Arizona's survival statute.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[10] Ultimately, "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to

---

Ariz. Apr. 4, 2013), ECF No. 123.

[8] Doc. 65 at 10.

[9] Fed. R. Civ. P. 56(a).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[11] *Id.*

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[13] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[14] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[15] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[16] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[17]

## IV. DISCUSSION

**A. *Res Judicata***

The doctrine of *res judicata*, which defines the preclusive effect of a judgment, is comprised of two separate doctrines known as claim preclusion and issue preclusion.[18] Claim preclusion bars "successive litigation of the very same claim, whether or not

---

[12]*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[13]*Id.* at 323.

[14]*Id.* at 323-25.

[15]*Anderson,* 477 U.S. at 248-49.

[16]*Id.* at 255.

[17]*Id.* at 248-49.

[18]*White v. City of Pasadena*, 671 F.3d 918, 926 (9th Cir. 2012).

relitigation of the claim raises the same issues as the earlier suit."[19] Issue preclusion (otherwise known as collateral estoppel) "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim."[20] The res judicata effect of federal court judgments is a matter of federal law.[21]

**1. Claim Preclusion**

Virgillo argues that plaintiffs are claim precluded from bringing this action by virtue of the judgment in favor of the City and against plaintiffs in *Fernandez I*. Claim preclusion applies where three elements are met: "(1) the same parties, or their privies, were involved in the prior litigation, (2) the prior litigation involved the same claim as the later suit, and (3) the prior litigation was terminated by a final judgment on the merits."[22] Virgillo argues that the first element is satisfied because he stands in privity with the City.[23] This argument is not well-taken, because in the context of the abatement argument Virgillo raised in support of his motion to dismiss the court already ruled that Virgillo is not in privity with either the City or Chrisman.[24]

The Ninth Circuit claim preclusion case law that Virgillo cites is distinguishable. As plaintiffs point out, *Fund for Animals v. Lujan*,[25] is inapposite because Virgillo

---

[19]*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

[20]*Id*.

[21]*W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871 (9th Cir. 1992) (citing *Robi v. Five Platters*, 838 F.2d 318, 322 (9th Cir.1988)).

[22]*Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 555 (9th Cir. 2003).

[23]Doc. 63 at 4.

[24]Doc. 9 at 8-9.

[25]962 F.2d 1391, 1398 (9th Cir. 1992) (holding that privity exists between the government and government employees sued in their official capacity).

appears here in his individual, not official, capacity.[26] *Nordhorn v. Ladish Co., Inc.*,[27] actually undercuts Virgillo's argument because there the Ninth Circuit held that res judicata did not apply because the defendants in the two cases were not in privity with one another.[28] The same is true for *Scoggin v. Schrunk*[29] and *Bailey v. I.R.S.*[30]

**2. Issue Preclusion**

Virgillo also argues that this action is claim precluded because the $8.5 million stipulated judgment in plaintiffs' favor against Chrisman in *Fernandez I*[31] represents plaintiffs' full damages resulting from the shooting.[32] To the extent that Virgillo's argument is based on claim preclusion, it fails for Virgilio's lack of privity with Chrisman[33] as explained above.

---

[26] *See Robinson v. Brown*, No. 2:12-CV-1776, 2014 WL 1779460, at *7 (E.D. Cal. May 5, 2014); RESTATEMENT (SECOND) OF JUDGMENTS § 36(2) (1982) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity.").

[27] 9 F.3d 1402 (9th Cir. 1993).

[28] *Id*. at 1405-06.

[29] 522 F.2d 436, 437 (9th Cir. 1975) ("[W]here the federal constitutional claim is based on the same asserted wrong as was the subject of a state action, and *where the parties are the same*, [r]es judicata will bar the federal constitutional claim . . . .") (emphasis added).

[30] 188 F.R.D. 346, 351 (D. Ariz. 1999) ("For a prior judgment to bar action on the basis of res judicata, *the parties must be identical in both suits*, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases.") (emphasis added). However, reliance on the district court decision in this case is inappropriate because the court of appeals held that the district court lacked jurisdiction to hear the case. *Bailey v. United States Internal Revenue Serv.*, 232 F.3d 893, at *1 (9th Cir. 2000) (table).

[31] Stipulated Final Judgment, *Fernandez v. Phoenix*, No. 2:11-cv-02001-FJM (D. Ariz. Apr. 4, 2013), ECF No. 123.

[32] Doc. 63 at 6.

[33] *See* Doc. 9 at 8-9.

Although Virgillo insists he is not raising issue preclusion,[34] his argument relies on numerous authorities that pertain to issue preclusion, not claim preclusion.[35] Because Virgillo appears to be raising issue preclusion, and because plaintiffs' response analyzes Virgillo's argument accordingly, the court will discuss issue preclusion. Issue preclusion applies where (1) the issue at stake is identical to an issue raised in a prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation was a critical and necessary part of the judgment in the earlier action.[36] Defensive use of issue preclusion prevents "a plaintiff from relitigating identical issues by merely switching adversaries," giving "a plaintiff a strong incentive to join all potential defendants in the first action if possible."[37]

In *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*,[38] the plaintiffs were involved in a car accident after a tire failed on the van they rented. They sued the rental car company and, while that case was pending, also brought a counterclaim against the tire's manufacturer in a subsequent action. The first case went to trial and the jury awarded the plaintiffs full compensatory damages of $9.5 million. Although the jury intended to allocate 30% of fault to the tire manufacturer, the rental car company nonetheless paid the entire amount of the judgment.[39] This caused the court in the

---

[34]Doc 73 at 4 n4.

[35]Doc. 63 at 6–7 (citing *Bridgestone/Firestone N. Am. Tire, L.L.C. v. Naranjo*, 79 P.3d 1206, 1212 (Ariz. Ct. App. 2003); RESTATEMENT (SECOND) OF JUDGMENTS § 29 (1982)); Doc. 73 at 3–4 (citing *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 327 & n.8 (1979)).

[36]*See Littlejohn v. United States*, 321 F.3d 915, 923 (9th Cir. 2003). *Accord Naranjo*, 79 P.3d at 1211. Because federal common law and Arizona state law do not differ in any relevant respect, the court needs not decide whether federal law should incorporate state law on this point. *Cf. Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2376 n.6 (2011).

[37]*Parklane Hosiery Co.*, 439 U.S. at 329–30 (citing *Bernhard v. Bank of Am. Nat. Trust & Sav. Ass'n*, 122 P.2d 892, 895 (Cal. 1942)).

[38]79 P.3d 1206, 1212 (Ariz. Ct. App. 2003).

[39]79 P.3d at 1210.

second case to grant summary judgment in favor of the tire manufacturer. The Arizona Court of Appeals of affirmed, holding *inter alia* that the issue of the plaintiffs' damages resulting from the accident was litigated and determined in the first case and therefore precluded in the second action.[40] The court also held that this result was consistent with Arizona's longstanding public policy in favor of "joining all known and available tortfeasors as defendants in one action" in the interest of judicial economy.[41]

Here, although plaintiffs' damages resulting from Chrisman's shooting and Virgillo's inability to prevent that shooting are identical, *Naranjo* is nevertheless distinguishable. In *Naranjo*, the jury expressly stated it was awarding the plaintiffs full damages. In contrast, the stipulated judgment in *Fernandez I* is ambiguous. It awards plaintiffs "compensatory damages on [their] claims" but does not specify how those damages were calculated or whether they represent full compensation or some compromised amount. Because the court cannot definitively conclude that the *Fernandez I* judgment determined the plaintiffs' full damages resulting from the shooting, issue preclusion does not apply.

**B. Pre-Death Pain and Suffering Damages**

Claim Two of plaintiffs' complaint seeks damages for the pre-death pain and suffering that Virgillo caused Rodriguez when he tased him.[42] The parties agree that

---

[40]*Id*. at 1211–12.

[41]*Id*. at 1212. These public policy considerations inform the rules that govern the doctrines of res judicata and mandatory joinder but are not, contrary to Virgillo's argument, an independently sufficient basis for barring a subsequently filed action. As the First Circuit observes in *Kathios v. Gen. Motors Corp.*, "'[c]onsiderations of judicial economy and a policy of finality in our legal system have resulted in the development of the doctrines of res judicata and collateral estoppel to avoid repetitive litigation.'" 862 F.2d 944, 951 (1st Cir. 1988) (quoting *Scheele v. Village District of Eidelweiss*, 453 A.2d 1281, 1284 (N.H. 1982)).

[42]Plaintiffs' Amended Complaint does not identify the legal basis for their request for pain and suffering damages. Doc. 1-1 at 18. When applying the remedy selection provision of § 1988, courts must look to "the most closely analogous state law." *Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1188 (7th Cir. 1985). Here, the most closely analogous state law is Arizona's survival statute: A.R.S. § 14-3110. *See Gotbaum v. City of Phoenix*, 617 F. Supp. 2d

such damages abate under Arizona's survival statute[43] unless that result would be inconsistent with the purposes of § 1983.[44] In *Robertson v. Wegmann*, the Supreme Court held that state survival statutes are not inconsistent with § 1983 if (1) they are not generally inhospitable to § 1983 actions and (2) do not thwart § 1983's underlying policies when specifically applied.[45] The court has already ruled that Arizona's survival statute is not generally inhospitable to § 1983 actions.[46] The remaining question is whether applying Arizona law would undermine § 1983's policy goals.

The two primary policy goals that underlie § 1983 are (1) compensation of persons injured by deprivation of federal rights and (2) prevention of abuses of power by those acting under color of state law.[47] *Robertson* held that state survival statutes are not inconsistent with § 1983's first, compensation-related goal because survival actions are not brought by injured parties themselves, but rather by the executors of their estates.[48] Whether a survival statute is inconsistent, the second, prevention-related goal depends on whether the alleged injuries caused the decedent's death. If the answer is yes, abating pain and suffering damages is inconsistent with § 1983's prevention goal because this would reduce or, more often, eliminate the compensatory damage awards

---

878, 883 (D. Ariz. 2008).

[43] A.R.S. § 14-3110 ("[U]pon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.").

[44] 42 U.S.C. § 1988(a). *See also Robertson v. Wegman*, 436 U.S. 584, 589–90 (1978) (holding that under § 1988 state survival statutes provide "the principal reference point in determining survival of civil rights actions, subject to the important proviso that state law may not be applied when it is inconsistent with the Constitution and laws of the United States.").

[45] *Id.* at 594.

[46] Doc. 65 at 9.

[47] *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 254 (1978); *Mitchum v. Foster*, 407 U.S. 225, 238–42 (1972); *Monroe v. Pape*, 365 U.S. 167, 172–87 (1961)).

[48] *Id.* at 592.

for the survivors of people killed in violation of federal law.[49] This would create "the perverse effect of making it more economically advantageous for a defendant to kill rather than injure his victim," which is undoubtedly inconsistent with § 1983's deterrence policy.[50] If the action did not cause the decedent's death, however, abating pain and suffering damages would not hinder § 1983's prevention goal because the official would have had no way of knowing in advance that the decedent would die before he could bring a § 1983 suit.[51] As the Court of Appeals of Arizona has held, "it is patently absurd to suggest that officers are likely to engage in unconstitutional conduct based on the assumption that the victim will die within a short period of time, thereby freeing them from liability for pain and suffering damages."[52]

Although plaintiffs concede that Rodriguez was killed by Chrisman's gunfire, not Virgillo's tasing, they argue that Virgillo's tasing eventually caused Rodriguez's death in the sense that the tasing was "part of a single incident, the same transaction and occurrence, involving the use of ever-escalating force" by both Virgillo and Chrisman that led to Rodriguez's death.[53] To establish causation under traditional tort law, which applies in § 1983 actions, plaintiffs must show not only that Virgillo's tasing was a cause in fact of Rodriguez's death, but also that it was a legal or proximate cause.[54] Thus, under plaintiffs' theory, plaintiffs must show not only that Virgillo's tasing set in motion a series of acts that eventually caused Chrisman to kill Rodriguez, but also that Virgillo

---

[49]*Chaudhry v. City of Los Angeles*, No. 11-55820, 2014 WL 2030195, at *5 (9th Cir. May 19, 2014).

[50]*Id.*

[51]*Id.* at *4 (citing *Robertson*, 436 U.S. at 592 & n.10).

[52]*Badia v. City of Casa Grande*, 988 P.2d 134, 140 (Ariz. Ct. App. 1999).

[53]Doc. 69 at 13.

[54]*See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996); *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981).

knew or reasonably should have known that his tasing would cause this result.[55] If Chrisman's decision to shoot Rodriguez was not actually caused by Virgillo's tasing, or if the shooting was not a foreseeable result, Chrisman's intervening actions break the chain of causality.[56]

If plaintiffs could point to any evidence that tends to show that Virgillo's tasing in some way caused Chrisman to shoot Rodriguez, there would be a dispute of material fact on the issue of causation sufficient to defeat summary judgment. But plaintiffs do not point to any such evidence.[57] Because nothing in the record indicates that Virgillo's tasing had any influence on Chrisman's decision to shoot Rodriguez, the tasing was not an actual, let alone proximate, cause of Rodriguez's death.

It is not inconsistent with § 1983's policy goals to apply Arizona's survival statute here. Plaintiffs' claims for pre-death pain and suffering damages are abated. Because plaintiffs do not identify any other relief that they are seeking under Claim Two, that claim is dismissed.

**C. Qualified Immunity**

Plaintiffs' Third Claim alleges that Virgillo violated Rodriguez's Fourth Amendment right to be free from the excessive use of force because Virgillo had an opportunity to intercede and stop Chrisman's use of excessive force but failed to do so.[58] Virgillo argues that he is entitled to qualified immunity regarding this claim. In determining whether a government official is entitled to qualified immunity the court

---

[55] *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978) (holding that the requisite causal connection under § 1983 "can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.").

[56] *See Van Ort*, 92 F.3d at 837 (quoting *Gutierrez–Rodriguez v. Cartagena*, 882 F.2d 553, 561 (1st Cir. 1989) ("An unforeseen and abnormal intervention . . . breaks the chain of causality, thus shielding the defendant from [section 1983] liability.").

[57] Doc. 69 at 12–14.

[58] Doc 1-1 at 16-17.

must consider "(1) whether, taking the facts in the light most favorable to the nonmoving party, the government official's conduct violated a constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct."[59] "If the answer to either is 'no,' the official cannot be held liable for damages."[60] Plaintiffs, at docket 46, previously filed a motion for summary judgment regarding whether Virgillo could assert this qualified immunity defense. The court denied plaintiffs' motion at docket 66, opting instead to consider the question in the context of Virgillo's present motion for summary judgment, which was filed with the benefit of full discovery.

**1. It was clearly established that police officers must intercede to prevent constitutional violations if they are reasonably able to do so**.

Turning to the second qualified immunity question first, in determining whether an officer's conduct violated clearly established federal law, courts look to whether the state of the law at the time gave the defendant "fair warning" that his conduct was unlawful.[61] "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'"[62] In order for an officer to be liable, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[63] This does not require a plaintiff to point to a previous case holding that the exact same conduct was unlawful; it requires a showing that in the light of pre-existing law the unlawfulness of the conduct was apparent.[64]

---

[59]*C.F. ex. rel. Farnan v. Capistrano Unified School Dist.*, 654 F.3d 975, 986 (9th Cir. 2011).

[60]*Id*.

[61]*Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

[62]*Stanton v. Sims*, 134 S. Ct. 3, 4–5 (2013) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011)).

[63]*Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[64]*Id*.

Whether the state of the law was clearly established is a question of law to be determined by the court in the absence of genuine issues of material fact.[65]

By 2010 it was clearly established that it violates the Fourth Amendment for a police officer not to intercede to prevent another officer from using excessive force if the officer had a reasonable opportunity to do so.[66] If an officer merely stands by without trying to assist the victim, that officer may be held liable as a tacit collaborator.[67] For example, *O'Neill v. Krzeminski*,[68] which several pre-2010 Ninth Circuit cases cite with approval,[69] involved an officer who failed to intercede to prevent other officers from striking the plaintiff three times and then dragging him by the throat across the room. Although the Second Circuit held that the three blows were "struck in such rapid succession" that the passive officer had no realistic opportunity to attempt to prevent

---

[65]*Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993).

[66]*See United States v. Koon*, 34 F.3d 1416, 1447 n. 25 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81 (1996) ("[A]n officer who failed to intercede when his colleagues were depriving a victim of his Fourth Amendment right to be free from unreasonable force in the course of an arrest would, like his colleagues, be responsible for subjecting the victim to a deprivation of his Fourth Amendment rights."); *Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (holding that police officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen and are liable where they had a reasonable opportunity to intercede and failed to do so). *See also Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."); *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) ("[I]t is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge.").

[67]*O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir.1988).

[68]839 F.2d at 9.

[69]*Motley v. Parks*, 383 F.3d 1058, 1071 (9th Cir. 2004), *on reh'g en banc*, 432 F.3d 1072 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012); *Koon*, 34 F.3d at 1447 n. 25.

them, it nonetheless held that because the passive officer saw the victim being beaten, he was alerted to the need to intercede to protect the victim from further abuse.[70]

Although Virgillo's duty to intercede was clearly established at the time, the precise methods of intervention required were not. Plaintiffs argue that Virgillo violated his duty by not interceding when Chrisman first drew his weapon at the beginning of the encounter.[71] The flaw with this argument is that Virgillo *did* intercede then. He talked to Rodriguez to try to calm him down, offered him a ride, and allowed him a pathway to wheel his bike out of the trailer and away from harm. Even if these attempts to prevent Chrisman from using excessive force were ultimately unsuccessful, plaintiffs cite no authority that clearly establishes he had a constitutional duty to intercede differently. The court concludes that Virgillo's actions do not demonstrate plain incompetence or a knowing violation of the law.

Although the court previously concluded that whether Virgillo's responses to Chrisman's initial acts of aggression violated his duty to intercede presents a question of fact for the jury,[72] that question only reaches the jury if the court first concludes that Virgillo is not entitled to qualified immunity.[73] Here, because the specific actions Virgillo was required to take under the circumstances was not objectively apparent, he is entitled to qualified immunity for the course of action he chose.

**2. Virgillo lacked a reasonable opportunity to intercede after the second time Chrisman raised his gun.**

Turning now to the first qualified immunity question—whether Virgillo failed to intercede despite a reasonable opportunity to do so—it is undisputed that Virgillo did

---

[70]*Krzeminski,* 839 F.2d at 10–12.

[71]Doc. 69 at 15–17.

[72]Doc. 66 at 7.

[73]*Act Up!/Portland*, 988 F.2d at 872 (Absent a genuine dispute of material fact, the issue whether an officer's conduct was in fact constitutional may go to the jury only after the court determines that the officer is not entitled to qualified immunity.).

not intercede in the split second between the second time Chrisman pointed his gun at Rodriguez and the shooting, or five seconds earlier when Chrisman raised his gun and shot Rodriguez's dog. Whether "an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise."[74] In the context of plaintiffs' motion for summary judgment on this issue, the court ruled that at the very least the evidence did not conclusively establish that Virgillo had an opportunity to intercede after the second time Chrisman raised his gun.[75] The court now concludes that Chrisman's re-escalation occurred so rapidly that no reasonable juror could find that Virgillo had such an opportunity.[76]

**E. Plaintiffs' Right to Familial Association**

Claim Four of plaintiffs' complaint alleges that Virgillo's actions deprived them of their Fourteenth Amendment right to familial association with their son.[77] It is well established that parents have a fundamental liberty interest in the companionship and society of their children.[78] It violates the Fourteenth Amendment for a state actor to interfere with that liberty interest without due process of law, and that violation is

---

[74] *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

[75] Doc. 66 at 7.

[76] *See Koon*, 34 F.3d at 1448 n.26 ("[I]f the blows had been struck so rapidly that Koon had no realistic opportunity to intervene, he would not be liable."); *Gates*, 229 F.3d at 1290 (non-shooting officers who had no realistic opportunity to intercede are not liable as a matter of law); *Gaudreault*, 923 F.2d at 207 n.3 (granting arresting officers' motion for summary judgment because the officers had no realistic opportunity to prevent the attack); *Krzeminski*, 839 F.3d at 11–12 (officer not liable for preventing blows struck in such rapid succession that there was no realistic opportunity to attempt to prevent them).

[77] Doc. 1-1 at 18.

[78] *Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (citing *Kelson v. City of Springfield*, 767 F.2d 651, 654–55 (9th Cir.1985)).

remediable under § 1983.[79] To determine whether such a substantive due process violation has occurred, courts apply the "shocks the conscience" test.[80] This origin of this test is *Rochin v. California*, where the Supreme Court found the forced pumping of a suspect's stomach offended due process because it "shocks the conscience" and violates the "decencies of civilized conduct."[81] "[T]he constitutional concept of conscience shocking duplicates no traditional category of common-law fault, but rather points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability."[82]

Virgillo argues that in order to meet the shocks the conscience standard plaintiffs must show that Virgillo acted with a purpose "to cause harm unrelated to the legitimate object of arrest,"[83] which is the standard of culpability that applies when actual deliberation was not practical under the circumstances.[84] Under the purpose to harm standard, liability turns on whether the police action was conducted as "a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"[85] Plaintiffs do not dispute that the purpose to harm standard

---

[79]*Id*.

[80]*Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).

[81]342 U.S. 165, 172–73 (1952).

[82]*Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).

[83]*Id*. at 836.

[84]*Porter*, 546 F.3d at 1139 (holding that "when an officer encounters fast paced circumstances presenting competing public safety obligations, the purpose to harm standard must apply") (citing *Lewis*, 523 U.S. at 853; *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Moreland*, 159 F.3d at 368)).

[85]*Lewis*, 523 U.S. at 853 (quoting *Albers*, 475 U.S. at 320–21).

applies. Instead, they rely on *Knapps v. City of Oakland*,[86] and *Koon*,[87] to argue that because a reasonable juror could find that Chrisman's conduct was carried out with a purpose to harm, that juror could also find that Virgillo's failure to intercede "and his apparent acquiescence" to Rodriguez's murder violates due process as well.[88]

Plaintiffs' argument misses the mark. *Koon* and *Knapps* do not hold that in a failure to intercede case the intent of the active officer is transposed to the passive officer, as plaintiffs suggest. Instead, those cases stand for the proposition that courts analyze both the passive and active officer's liability with respect to the same constitutional right.[89] Thus, for example, a claim for excessive force and a claim for failure to intercede to prevent the another's excessive force are each analyzed under the Fourth Amendment. In the context of this case, plaintiffs' claim that Virgillo failed to intercede to prevent Chistman's violation of their familial association rights is analyzed under the Fourteenth Amendment—just as a claim brought directly against Chrisman would be. Under the Fourteenth Amendment standards discussed above, plaintiffs must show that Virgillo acted with a purpose to harm.

Plaintiffs' argument fails because they do not point to any evidence that tends to show that Virgillo acted maliciously or sadistically for the purpose of causing harm. The fact that Cristman may have acted with such an intent says nothing about Virgillo's own intent. Virgillo is entitled to summary judgment on Claim Four.

---

[86] 647 F. Supp. 2d 1129, 1159 (N.D. Cal 2009).

[87] 34 F.3d 1416, 1447 n.25 (9th Cir.1994), *rev'd on other grounds*, 518 U.S. 81 (1996).

[88] Doc. 69 at 14.

[89] *See Koon*, 34 F.3d at 1447 n.25 (In a failure to intercede case, "the constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blows.").

### V.  CONCLUSION

For the reasons above, Virgillo's motion for summary judgment is **GRANTED**. The case is hereby **DISMISSED**.

DATED this 27th day of June 2014.

/S/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE
